# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4635 | **DATE** | 2/28/2003 |
| **CASE TITLE** | DataQuill Limited vs. Handspring, Inc. et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 3/18/2003 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** We grant the motion (Doc 125-1) to strike, grant in part and deny in part the summary judgment motion for non-infringement, deny the summary judgment motion for invalidity based on alleged prior art devices, and grant in part and deny in part the summary judgment motion for invalidity based on prior art patents (Docs 101-1, 102-1 & 103-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | FEB 2 8 2003 date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | FEB 2 8 2003 date mailed notice |

SCT

courtroom deputy's initials

U.S. DISTRICT COURT
CLERK
03 FEB 28 PM 2:50
FILED-ED 10
Date/time received in central Clerk's Office

mailing deputy initials

Document Number

132

DATAQUILL LIMITED, )
                  Plaintiff, )
    vs. )
HANDSPRING, INC. and KYOCERA )
WIRELESS CORP., )
                Defendants. )
============================= )
HANDSPRING, INC., )
             Counterclaimant, )
    vs. )      01 C 4635
DATAQUILL LIMITED, )
            Counterdefendant. )
============================= )
KYOCERA WIRELESS CORP., )
            Counterclaimant, )
    vs. )
DATAQUILL LIMITED, )
            Counterdefendant. )

DOCKETED
FEB 2 8 2003

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

    This matter comes before the court on a motion to strike an expert report and declaration and three motions for summary judgment, all brought by Defendant Handspring, Inc. ("Handspring"). For the reasons set forth below, we grant the motion to strike, grant in part and deny in part the summary judgment motion for non-infringement, deny the summary judgment motion for invalidity based on alleged prior



art devices, and grant in part and deny in part the summary judgment motion for invalidity based on prior art patents.

## BACKGROUND

Plaintiff DataQuill Limited ("DataQuill") brought this action against Handspring for patent infringement, inducement of patent infringement, and contributory patent infringement pursuant to 35 U.S.C. § 271(a)-(c). The patent in suit is U.S. Pat. No. 6,058,304 (the "'304 patent"), which is owned by DataQuill. The '304 patent describes a data entry device that can be used for inventorying or other data management purposes. The patent further describes a mobile handheld unit that, alone or in conjunction with a less mobile base unit, has an integral sensor, control, storage, display means, and a telecommunications interface that enable the device to be used in an efficient and self-contained manner for the capture, processing, storage, display, and transmission of data. In other words, the device is a handheld mobile computer that can input data, display data, store data, process data, and exchange data with a remote system.

Handspring makes and sells devices it markets under the names Treo and Visor. It is not entirely clear what the Treo and Visor products do, what they look like, or how they operate. What is clear is that DataQuill alleges that the Treo product directly infringes and the Visor product indirectly infringes by inducing and/or contributing to

third party infringement. The Visor product does not directly infringe because, without the attachment of a module providing telecommunication capabilities, it is incapable of exchanging data with a remote source. Handspring moves for summary judgment of non-infringement, invalidity based on alleged prior art devices, and invalidity based on prior art patents. Additionally, Handspring moves to strike DataQuill's expert's report and declaration.

## MOTION TO STRIKE

Handspring moves to strike the expert report and declaration of DataQuill's infringement expert, Harvey Brodsky, pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) and Federal Rule of Evidence 702. Rule 26(a)(2)(B) requires that an expert report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor." FED. R. CIV P. 26(a)(2)(B). Rule 702 only permits expert testimony that "will assist the trier of fact to understand the evidence or to determine a fact in issue". FED. R. EVID. 702. An expert may so testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* Pursuant to these requirements, "a district court judge is to act as a 'gatekeeper' for expert testimony, only admitting such testimony after receiving satisfactory evidence of its reliability." *Dhillon v. Crown*

*Controls Corp.*, 269 F.3d 865, 869 (7th Cir. 2001) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993). This gatekeeper function is entrusted to the discretion of the district court. *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 755 (7th Cir. 2002) ("We review a trial court's ruling on the admission of expert testimony for an abuse of discretion.")

Handspring contends that Brodsky's report is deficient for the following reasons:

Brodsky did not explain the methodology he employed;

He improperly considered the patent claims only in the context of the accused devices;

He assumed certain features of the accused devices were infringing;

He could not, at his deposition, explain the difference between certain claim limitations which he opined are met in the accused devices;

He could not recall why he opined that certain features of the accused devices satisfied claim elements;

He would not or could not explain the claim construction which he applied when analyzing the accused devices; and

He did not actually write his report.

DataQuill counters that Handspring's objections are not true, irrelevant, and go only to the weight (an issue for the jury), and not to the admissibility (an issue for the court), of Brodsky's testimony. We will address each of Handspring's contentions.

Handspring first complains that Brodsky failed to adequately explain his methodology, explaining it only as "[b]ased on [his] experience and expertise, [his] review of relevant documents, [his] operation of the devices, [his] examination of the devices, period." (Brodsky Dep. at 94:9-94:12.) We believe that operating and examining the accused devices (assuming it is done against the backdrop of a proper claim construction) is a reliable method of conducting an infringement analysis. *See Middleton, Inc. v. Minnesota Mining and Mfg.*, 311 F.3d 1384, 1387 (Fed. Cir. 2002) ("A patent infringement analysis involves two steps: claim construction and application of the construed claim to the accused process or product."). At Brodsky's deposition, Handspring clearly wanted more detailed information about Brodsky's methodology but instead of asking details regarding his examination and operation of the devices, Handspring simply repeatedly questioned Brodsky about his general methodology. For instance, Handspring could have asked what operations (such as downloading, transmitting, inputting, etc.) he performed using the accused devices.

Next, Handspring argues that Brodsky improperly considered the asserted claims only in the context of the accused devices. In his report, Brodsky states, "I did not

-5-

consider interpretation of claim terms in the abstract, but only in the context of their application to the specific devices I was asked to analyze." (Brodsky Rep. at 1-2.) At his deposition, he even admitted relying on the accused devices themselves to interpret claim limitations, which he then opined were present in the accused devices. (Brodsky Dep. 137:12-137:18.) In another instance, Brodsky disclosed that his infringement analysis applied a definition of a claim term that actually incorporated part of Handspring's device into the definition. When asked about the definition of "reading sensor" that he applied in his analysis, Brodsky corrected Handspring's counsel that it was not defined as any sensor that interfaced with "*a* CPU" but as any sensor that interfaced with "*the* CPU in the Visor". (Brodsky Dep. 249:16-249:19 (emphasis added).)

Next, Handspring argues that Brodsky simply assumed, rather than making his own assessment, that some of the accused devices' features met certain claim limitations. In particular, Handspring alleges that Brodsky assumed the touch screen of the accused devices constituted a reading sensor--an element of the asserted claims. While this would be entirely improper, there is nothing in the record to support it. In actuality, Brodsky was not referring to the touch screen in the accused devices but rather to the term "touch sensitive screen" present in claims 9, 40, 61, and 62. Brodsky assumed, pursuant to counsel's instruction, that "touch sensitive screen forming a said

reading sensor" meant that, with respect to claims 9, 40, 61, and 62, touch sensitive screen and reading sensor were one in the same. It is entirely proper for an expert to rely on counsel's claim construction when conducting his infringement analysis if the court has not yet construed the claims as a matter of law. In another instance, however, Brodsky made an inappropriate assumption. He assumed that the user interface of the Graffiti program–an available feature on the Treo devices–constituted a reading sensor as defined by the '304 patent. (Brodsky Dep. 241:23-242:1.)

Next, Handspring argues that Brodsky opined that certain elements of the claims were present in the accused devices without even having an understanding of the claim terms. In his report, Brodsky states, with respect to claim 20, that "the display is a carrier", meaning the Treo device has a display that constitutes a carrier as defined by claim 20. In his deposition, when asked for the interpretation of "carrier" which he applied to the Treo device in his infringement analysis of claim 20, Brodsky could not remember. In short, Brodsky cannot remember the definition of "display" that he used, but whatever it was, it covers Handspring's display.

Next, Handspring argues that Brodsky does not know why certain features of the accused devices satisfied certain claim elements. In his deposition, Handspring sought to understand his basis and reasons for concluding that the Visor device coupled to a GPS module constituted infringement. Brodsky, however, could not recall the logic

supporting his determination that the coupled device infringed. (Brodsky Dep. 250:16-250:17) ("I honestly don't recall the complete logic of this.")

Next, Handspring argues that Brodsky failed to disclose the construction of the claims which he applied in his infringement analysis. Brodsky stated that in some cases he relied on DataQuill's counsel's claim construction and in other cases he did not. (Brodsky Dep. 107:12-107:15.) His declaration clearly implies that his only source of claim interpretation was DataQuill's counsel. (Brodsky Decl. ¶ 5.) Thus, on what claim interpretation did he rely in these "other cases"? Furthermore, he cannot even say for which claims he relied on DataQuill's counsel and on which claims he did not. (Brodsky Dep. 107:16-107:19.)

Next, Handspring contends that Brodsky did not actually write his own expert report. Brodsky even admits that counsel for DataQuill actually did the typing. (Brodsky Dep. 76:4-76:6.) Large quantities of DataQuill's interrogatory responses appear verbatim in Brodsky's report. DataQuill's explanation for this is that "portions of the language used in DataQuill's interrogatory responses were used where appropriate to express Dr. Brodsky's conclusions." (DataQuill Resp. at 9.) Despite this admission that DataQuill expressed portions of his opinion for him, Brodsky declares under penalty of perjury that the report is his own opinion. (Brodsky Decl. ¶ 6.)

Brodsky's report and declaration are not reliable.  *See* FED. R. EVID. 702 (requiring reliability).  He did not follow a proper infringement analysis of applying properly construed claims to the accused devices.  First, it is not clear what or whose interpretation of the claims he applied in his analysis.  Second, he determined some claim terms in light of the accused devices and in one instance incorporated the accused device into his definition.  Third, in another instance he simply assumed that a device feature satisfied a claim term.  Additionally, Brodsky's report and declaration will not assist the trier of fact.  *See* FED. R. EVID. 702 (requiring expert testimony to assist the trier of fact).  We doubt the value to the trier of fact of a hired expert's opinion when the party hiring him has put words in his mouth–or in this case, in his report–leaving him, in essence, a highly qualified puppet.  The report and declaration fail to comply with Federal Rule of Evidence 702.

Brodsky's report fails to state the basis and reasons therefor.  *See* FED. R. CIV. P. 26(a)(2)(B) (requiring "basis and reasons therefor").  Brodsky could not explain the definition of claim terms that he found present in the accused devices, could not explain why features satisfied particular claim limitations, and could not remember for which claims he was provided a claim construction by DataQuill's counsel.  Thus, the report fails to comply with Federal Rule of Civil Procedure 26(a)(2)(B).

The motion to strike the expert report and declaration is granted.

# MOTIONS FOR SUMMARY JUDGMENT

## I.    Legal Standard

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Bay v. Cassens Transport Co.,* 212 F.3d 969, 972 (7th Cir. 2000). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. *Id.* The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. *Id.* A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

## II.    Non-Infringement

### A.    <u>Direct Infringement</u>

DataQuill claims that the Treo device directly infringes the '304 patent. The patent statute states that "whoever without authority makes, uses, offers to sell, or sells

any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). In order for the accused device to constitute the patented invention, "every element in the claim must be found in the accused device either literally or equivalently." *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562 (Fed. Cir. 1991); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 1000 (Fed. Cir. 1995) ("a claim is not infringed unless every element thereof is met in the accused device, either literally or by an equivalent"). Handspring argues that the Treo device does not infringe because it does not possess one of the claim elements: a reading sensor. DataQuill counters that a proper construction of the claim term "reading sensor" covers the touch screen in the Treo device. Thus, the issue with respect to direct infringement boils down to claim construction, which is a question of law. *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1148 (Fed. Cir. 2003).

Every one of the sixty-three claims in the '304 patent includes the limitation "reading sensor". Claims 1-25 and 61-63 describe it as "a reading sensor responsive to commands and/or sensed commands and data." Claims 26-60 describe it as "a reading sensor for sensing commands and/or data." A touch sensitive screen is clearly capable of being responsive to commands and sensing commands. In fact, claims 9, 40, and 61-63 specifically employ a touch sensitive screen as the reading sensor. U.S.

Pat. No. 6,058,304 claims 9, 40 ( "a touch sensitive screen forming a said reading sensor"); claims 61-63 ( "a touch sensitive screen forming said reading sensor"). Handspring argues that this language "does not mean, however, that the reading sensor is the touch screen: just that the touch screen could form part of the reading sensor by providing a frame on which the actual reading sensor is mounted." Pl. Memo. at 5. We disagree. These five claims clearly define the reading sensor to be a touch screen that can sense commands.

Handspring further argues that claims 9, 40, and 61-63 were added during prosecution of the patent (after the patent's priority date) and, therefore constitute new matter in violation of 35 U.S.C. § 112 ¶ 1. *See TurboCare Div. of Demag Delaval Turbomachinery v. General Elec.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001) ("When the applicant adds a claim or otherwise amends his specification after the original filing date, as [he] did in this case, the new claims or other added material must find support in the original specification."). First, our holding that reading sensor includes touch screens is not limited to these five claims. Second, the new matter issue is relevant to validity, not infringement. Third, these five claims do not include new matter anyway. Although Handspring states that the '304 patent essentially covers a pen-shaped bar code reader, the specification clearly explains how a touch screen can supplement or altogether replace the bar code reader. After describing the use of a touch screen, in

particular with reference to Figure 8 of the patent, the specification states: "Touch screen entry can be used *in place of* or in addition to the entry of commands by scanning the bar codes on the command bar code card." U.S. Pat. No. 6,058,304 at 13:17-13:21 (emphasis added).

Having interpreted the claim term reading sensor to include touch sensitive screens that can sense commands, the motion with respect to the Treo devices is denied.

B.     Indirect Infringement

DataQuill claims that the Visor device indirectly infringes the '304 patent. Indirect infringement, by way of inducing or contributing to infringement, is prohibited under the patent statute. 35 U.S.C. § 271(b) and (c). While acknowledging that the Visor alone does not possess all of the limitations of any of the claims, DataQuill alleges that the Visor is designed to receive expansion modules that bring with them the missing claim limitation, namely a communications or telecommunications interface. To prove indirect infringement by Handspring, DataQuill must prove that third parties are actually infringing its patent. *Sage Prods. v. Devon Industries, Inc.*, 45 F.3d 1575, 1577 (Fed. Cir. 1995); *see also Joy Techs. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement.").

Thus, DataQuill must prove that end-users ultimately combine the Visor device with a module providing communications capabilities. DataQuill has offered no evidence of direct infringement by end-users. DataQuill's Response does not even address contributory infringement and devotes only a single bullet point to the issue of inducement. In that bullet point, DataQuill, instead of laying out its factual support, directs the court to read through a portion of its statement of facts. We did, and we disagree with DataQuill's summary assertion that such "evidence is more than sufficient to create a disputed issue of material fact precluding the entry of summary judgment." Indeed, it is not even sufficient. Nothing in those statements of fact pertains to actual infringement by end-users.

With respect to contributory infringement, DataQuill would also have to prove that the Visor device is "not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. 271(c); *Lummus Indus. v. D.M. & E. Corp.*, 862 F.2d 267, 272 (Fed. Cir. 1988). DataQuill admits that the Visor device is capable of being operated by itself without attaching a communications module. DataQuill further admits that it is, in fact, frequently used without a communications module. In the face of this evidence, no reasonable jury could find that the Visor is not suitable for substantial non-infringing use.

Accordingly, the motion is granted with respect to the Visor line of products.

## III. Invalidity

Under the patent statute, a patent and its claims are presumed valid. 35 U.S.C. § 282. Despite this presumption, Handspring moves for summary judgment that most of the sixty-three claims of the '304 patent are invalid as anticipated by alleged prior art devices and by prior art patents. "Invalidity based on 'anticipation' requires that the invention is not in fact new." *Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002). More specifically, "anticipation requires that each limitation of a claim must be found in a single [prior art] reference." *Teleflex, Inc. v. Ficosa North Am. Corp.*, 299 F.3d 1313, 1335 (Fed. Cir. 2002). Anticipation is a question of fact. *Minnesota Mining & Mfg. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002). Because this is a summary judgment motion, Handspring must establish that there are "no material facts in dispute relating to its assertion of anticipation". *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000). Additionally, because the patent is presumed valid, Handspring must prove anticipation by "clear and convincing evidence". *Id.*

Handspring's anticipation position relies on prior art that was not considered by the Patent and Trademark Office ("PTO") during examination of the '304 patent. Thus, although the patent is presumed valid in the absence of clear and convincing evidence to the contrary, we do not defer to the PTO as to the effect of prior art never

before the PTO. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984) ("When an attacker, in sustaining the burden imposed by § 282, produces prior art or other evidence *not* considered in the PTO, there is, however, *no reason to defer* to the PTO so far as *its* effect on validity is concerned."); *EWP Corp. v. Reliance Universal Inc.*, 755 F.2d 898, 905 (Fed. Cir. 1985) ("The PTO examiner did not cite the German or French '698 patents against the '036 patent application. Therefore, in considering obviousness, we have no PTO view before us on obviousness in view of those references and appellants' burden of proof under 35 U.S.C. § 282 is more easily carried."). Nevertheless, the '304 patent is presumed valid, and Handspring carries a burden of persuasion to prove otherwise by clear and convincing evidence. *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1573 (Fed. Cir. 1984) ("Though the introduction of prior art not before the PTO may facilitate meeting the challenger's ability to meet the burden of proof on invalidity, the presumption remains intact, the burden of persuasion remains on the challenger, and the "clear and convincing" standard does not change."); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1375 (Fed. Cir. 1986) ("Notwithstanding that the introduction of prior art not before the examiner may facilitate the challenger's meeting the burden of proof on invalidity, the presumption remains intact and on the challenger throughout the litigation, and the clear and convincing standard does not change.").

## A.    Alleged Prior Art Devices

Handspring contends that EO Corporation's EO Personal Communicator loaded with a EO Cellular Module (collectively the "EO") anticipates most of the claims of the '304 patent. Handspring claims that the EO constitutes prior art as defined in 35 U.S.C. § 102(a). Section 102(a) defines prior art as that which "was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent." 35 U.S.C. § 102(a). Both parties agree that the invention date for the '304 patent is October 13, 1993. Thus, the EO is only relevant if it was known or used by others in this country prior to October 13, 1993. Such knowledge or use must have been available to the public. *See Carella v. Starlight Archery,* 804 F.2d 135, 139 (Fed. Cir. 1986) ("The statutory language, 'known or used by others in this country' (35 U.S.C. § 102(a)), means knowledge or use which is accessible to the public.").

There is a disputed issue of fact regarding whether the EO was publicly known or used prior to October 13, 1993. Handspring claims the EO was "publicly demonstrated" at a trade show in November 1992. Handspring, however, relies upon evidence not fully supportive of this claim. The evidence is only probative of the fact that brochures were distributed at a trade show in November 1992. Furthermore, the cited testimony fails to clarify what EO devices the brochures concerned or the depth

of explanation given in the brochures. Handspring also claims that the EO was in "public use since at least February 1993". Again, Handspring relies upon evidence not fully supportive of its claim. The evidence only concerns the EO 440 and EO 880 models, which remain unexplained to the court. There is no mention of the EO Personal Communicator loaded with a EO Cellular Module, which we have termed the EO in this opinion and on which Handspring bases its motion. Furthermore, the evidence is not probative of public use or knowledge of the EO 440 and EO 880. The witness merely states that the EO 440 and EO 880 were packaged prior to October 13, 1993. Just because a product was packaged does not mean it was sold to the public, and we decline to make such an inference on behalf of the moving party, Handspring. *See Gonzalez v. Kokot*, 314 F.3d 311, 315 (7th Cir. 2002) (inferences on summary judgment should be made in a light most favorable to the *nonmoving* party).

Additionally, even if the EO was publicly known or used before the invention of the '304 patent, there appears to be questions of disputed fact regarding whether the EO possesses all the claim limitations of any of the claims. We do not have the EO before us for our own examination. What we do have is competing evidence regarding the EO's specifications and capabilities. This is a question for the jury.

B. <u>Prior Art Patents</u>

Handspring contends that U.S. Pat. Nos. 5,335,276 and 5,465,401 (collectively the "Thompson patents") each independently anticipate the '304 patent. The Thompson patents have identical specifications, excluding their claims, and are treated as one in the same for purposes of this motion. It is not disputed that the Thompson patents constitute prior art as defined in 35 U.S.C. § 102(e)(2). Section 102(e)(2) defines prior art as that which is described in "a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent". 35 U.S.C. § 102(e)(2). The Thompson patents, filed in December 1992, qualify as prior art under section 102(e) because they were filed prior to the invention date of the '304 patent, October 13, 1993. Thus, the only issue with respect to the Thompson patents is whether they disclose the '304 patent.

As stated above, "anticipation requires that each limitation of a claim must be found in a single [prior art] reference." *Teleflex*, 299 F.3d at 1335. Thus, if each limitation of a claim in the '304 patent is disclosed in the Thompson patents, that claim is invalid. Handspring argues that the Thompson patents anticipate claims 1-2, 4-6, 9-10, 18, 20, 22, 26-30, 32-35, 37, 40-41, 43, 51, 53, 55-56, 59-62 (the "claims at issue") of the '304 patent. We do not consider the remaining '304 patent claims on this motion.

All of the claims at issue, except claims 27, 28, 30, 61, and 62, include the claim limitation: "to cause downloading of information from a remote processing center as required for updating information previously stored". The claim term "downloading of information" means that information is both received and stored. The Thompson patents state only that information is "transmitted" from the central facility/information service. There is no reference to such information being downloaded from the central facility/information service or stored on the device once it is transmitted to the device.

Claims 26-60 include the claim limitation "rewriteable storage". Handspring argues that the memory disclosed in the Thompson patents is rewriteable memory. Despite that the word rewriteable never appears in the Thompson patents, Handspring maintains that the "memory is clearly rewriteable because the device is capable of receiving new information (*e.g.*, message or prices), and such information is stored in memory." Handspring's premise that new information is stored in its memory is an invention in itself. In fact, the portions of the '276 Thompson patent that Handspring cites for support of its circular argument are wholly silent on the issue of rewriteable storage:

> The information shown on display 60b indicates the status of information available to the user from either central facility 22 or information service 30 or 32. By touching the appropriate portion of touch sensitive display 60, each of these messages will be presented to the user.

When the price list application is activated for communication device 50 or 150, only changes in the price list need to be transmitted via the communication network.

U.S. Pat. No. 5,335,276 at 19:49-19:54; *Id* at 20:2-20:5. All the Thompson patents disclose is that information is "transmitted" from a remote source and "presented" to the user. To the extent that Handspring argues that downloading the new information onto rewriteable storage is inherently disclosed, the argument fails because downloading is not necessary. *See Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002) ("anticipation by inherent disclosure is appropriate only when the reference discloses prior art that must *necessarily* include the unstated limitation"). For instance, a television is capable of presenting information to a user received from a remote source without downloading the information. The same is true for an Internet-equipped personal computer. Thus, it is not necessary, or inherent, to download data received from a remote source in order to present it to a user.

The only remaining claims at issue are claims 61 and 62, anticipation of which is not contested by DataQuill. Claims 61 and 62 do not require downloading of information or rewriteable storage. Claim 61 consists of the following elements:

(a)     a reading sensor responsive to commands and/or sensed commands and data to produce input signals;

(b)     a controller coupled to said reading sensor to receive and process said input signals;

(c)    said controller coupled to a communications interface to selectively control transmission over said communications interface of command and/or data signals as determined by said input signals processed by said controller; said communications interface being operable directly to connect said data entry device to a wireless telecommunications network;

(d)    a display coupled to said controller to display commands and/or information under control of said input signals processed by said controller; and

(e)    wherein said reading sensor, controller and display comprise a unitary assembly and said communications interface is a cellular telephone network interface and said wireless telecommunications network is a cellular telephone network; and wherein said display screen comprises a touch sensitive screen forming said reading sensor, said controller being arranged to be responsive to a location at which said screen is touched for user input.

U.S. Pat. No. 6,058,304 claim 61. The Thompson patents disclose each and every element of claim 61. First, DataQuill admits that the Thompson patents disclose elements (a), (b), and (d) except for the "coupled" limitations in elements (b), and (d). (Pl. Resp. to Def. Stmt. of Facts ¶¶ 45 and 46.) Second, Figure 8 and its detailed description clearly disclose elements (c) and (e). Figure 8 details a block diagram of an electrical circuit showing a unitary assembly of, among other things, a touch screen reading sensor and display, a controller, and a cellular telephone network interface. Finally, Figure 8 depicts all of these components as electrically coupled with one

another either directly or indirectly through a common bus, thereby satisfying the "coupled" limitations of elements (b), (c), and (d).

Claim 62 is identical to claim 61 except that it further requires that the "data entry device is integral with a cellular telephone". U.S. Pat. No. 6,058,304 claim 62. Figure 2 of the Thompson patents and the accompanying detailed description clearly disclose a preferred embodiment of the invention in which a cellular telephone embodies the features of the invention. Thus, the Thompson patents anticipate claim 62 as well.

## CONCLUSION

Based on the foregoing analysis, we grant the motion to strike, grant in part and deny in part the summary judgment motion for non-infringement, deny the summary judgment motion for invalidity based on alleged prior art devices, and grant in part and deny in part the summary judgment motion for invalidity based on prior art patents.


Charles P. Kocoras
Chief Judge
United States District Court

Dated: _____FEB 2 8 2003_____

-23-